QUESTIONS PRESENTED AND CONCLUSIONS
Whether a designated enterprise, the Division of Correctional Industries, which provides license plates, validating tabs and decals under a letter of agreement with the Department of Revenue is automatically disqualified as an "enterprise" because it receives a direct appropriation for such license plates, tabs and decals.
No. A designated enterprise may continue to qualify as an enterprise under TABOR, even though it receives a direct appropriation of monies, so long as the appropriation constitutes revenues resulting from the provision of goods or services pursuant to Section 24-77-102(7)(b)(II), C.R.S.
BACKGROUND
TABOR was proposed by initiative and was approved by the voters in the general election on November 3, 1992. This multi-faceted provision requires voter approval for certain tax increases and the incurring of multiple fiscal year debts or financial obligations. It also limits the growth of revenues and limits spending. See Submission of Interrogatories on SenateBill 93-74, 852 P.2d 1 (Colo. 1993). TABOR is included in Article X of the Colorado Constitution, which deals with revenue.
Exempted from these restrictions are "enterprises," which TABOR defines as follows:
 "Enterprise" means a government-owned business authorized to issue its own revenue bonds and receiving under 10% of annual revenue in grants from all Colorado state and local governments combined.
Colo. Const. Art. 10, Section 20(2)(d). Effectuating this constitutional exemption, the General Assembly enacted, in 1994, an amendment to Section 17-24-104(1), C.R.S., whereby the Division of Correctional Industries ("Correctional Industries") was created as an enterprise.
Pursuant to this statute, Correctional Industries entered into a contractual arrangement through a letter of agreement with the Department of Revenue. Under the Letter of Agreement, Correctional Industries is required to use one of two processes for manufacturing license plates and is paid a set fee for each plate, validating tag and decal ordered and produced.
ANALYSIS
The funds paid to acquire license plates, validating tabs and decals from Correctional Industries are monies appropriated under the Long Bill. Currently, general fund monies are appropriated to the Department of Revenue under the Long Bill. The Long Bill grants spending authority to Correctional Industries. Prior to FY 95-96, highway users tax fund monies were appropriated to Correctional Industries. In FY 95-96, general fund monies were appropriated to Correctional Industries. The present inquiry is whether the direct appropriation of monies by the General Assembly to Correctional Industries and the fact that Correctional Industries received funds by direct appropriation in prior years defeats the designation of Correctional Industries as an enterprise.
In interpreting the Colorado constitution, we rely upon general rules of statutory construction. Bickel v. City ofBoulder, 885 P.2d 215, 228 (Colo. 1994). We must consider the terms of the constitutional provision itself and interpret the constitutional provision according to its clear terms.City of Aurora v. Acosta, 892 P.2d 264, 267 (Colo. 1995). In addition to these general rules of interpretation, TABOR provides that "[i]ts preferred interpretation shall reasonably restrain most the growth of government". Colo. Const. art. X, Section 20(1). The Colorado Supreme Court has interpreted this language to mean that "where multiple interpretations of an Amendment 1 [TABOR] provision are equally supported by the text of the amendment, a court should choose that interpretation which it concludes would create the greatest restraint on the growth of government." Acosta, 892 P.2d at 267.
To satisfy the definition of an "enterprise" under TABOR, the enterprise must be an independent, self-supporting government-owned business that receives income, fees, and revenue in return for the provision of goods or services. The very concept of an enterprise under TABOR envisions an entity that is owned by a government institution, but is financially distinct from it. Nicholl v. E-470 Public Highway Authority,896 P.2d 859, 868 (Colo. 1995). The financial affairs of the enterprise must be those of a self-supporting business-like activity that provides goods and services for a fee. TABOR specifically limits the amount of governmental support. An enterprise may not receive in excess of 10% of its funds in grants from state and local governments combined.
An enterprise must also engage in the kind of activity that is commonly carried on for profit outside the government.Nicholl, 896 P.2d at 868. The activities engaged in by the enterprise must bear the indicia of arms-length, market exchanges, and goods and services must be provided at a market rate sufficient for the independent operation of the enterprise.
This office is hesitant to give blanket approval to the proposition that an enterprise can receive a direct appropriation without losing its enterprise status. Our position is that each situation must be examined on an enterprise-by-enterprise basis to determine whether such direct appropriation is either a subterfuge to avoid the impact of Amendment 1 or is clearly oriented as a government-owned business receiving revenues from rates, fees, assessments or other charges for the provision of goods or services.
While the legislature approved a budget for Correctional Industries in FY 95-96, it is only to be used for the acquisition of raw materials for the production of license plates, tabs and decals. Correctional Industries must earn its funds from the sale of license plates to the Department of Revenue. See
Colo. Sess. Laws 2979 (funds earned shall be from sales revenue of the Division of Correctional Industries from sale to other state agencies;). In the two years, the legislature appropriated funds directly to Correctional Industries. See Colo. Sess. Laws 1848 (funds earned are "estimated to be sales to other state agencies"); Colo. Sess. Laws 2235 (funds earned are "from the DOR for the purchase of license plates").
The current arrangement is clearly more consistent with that of an enterprise than the 1994-95 arrangement since the Department of Revenue functions as an independent purchaser. However, upon closer inspection, we conclude that even the 1994-95 direct-appropriation arrangement evidenced a self-supporting business-like activity consistent with that of an enterprise.
The substance of the business arrangement for all of the years is that the Department of Revenue entered into a written Letter Agreement with Correctional Industries for each fiscal year. The Letter Agreement set out the amount to be paid per unit produced and the process of manufacture. Pursuant to this Agreement, Correctional Industries submitted a monthly bill to the State Treasurer for the amount due based upon the transmittal listing and invoices for the goods produced. This billing indicated the specific number of each type of license plate, tab and decal provided by Correctional Industries. The billing also included a twenty percent profit. Based on this bill, the Treasurer then paid Correctional Industries each month for each license plate, tag and decal ordered and produced.
Since the amounts received by Correctional Industries were for units produced at a set fee, the transactions are not a grant or subsidy as defined in section 24-77-102(7), C.R.S. That statute provides that a "grant" does not include any "revenues resulting from rates, fees, assessments, or other charges imposed by an enterprise for the provision of goods or services by such enterprise."
The amounts received by Correctional Industries enterprise, were in return for the provision of specific goods, and Correctional Industries, therefore, acted as an enterprise consistent with TABOR.
SUMMARY
Where a qualifying enterprise earned funds by the production and sale of specific goods, neither the fact that the funds originated from a direct appropriation, nor the fact that the legislature granted spending authority to the enterprise, automatically defeated enterprise designation for TABOR purposes. Accordingly, given the facts here, Correctional Industries retained its enterprise status.
Sincerely,
GALE A. NORTON Attorney General
MERRILL SHIELDS Deputy Attorney General
AMENDMENT ONE, ENTERPRISES CORRECTIONAL INDUSTRIES
ENTERPRISE
GENERAL FUNDS APPROPRIATION
Colo. Const. art. X, § 20.
Where a qualifying enterprise earned funds by the production and sale of specific goods, neither the fact that the funds originated from a direct appropriation, nor the fact that the legislature granted spending authority to the enterprise, automatically defeated enterprise designation for TABOR purposes. Accordingly, given the facts here, Correctional Industries retained its enterprise status.